IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

K.S.B. and K.T.B. *ex rel*.          *
NYISHA HARRIS,
                                     *
     Plaintiffs,
                                     *
vs.                                      CASE NO. 3:18-CV-146 (CDL)
                                     *
SECURIAN LIFE INSURANCE
COMPANY,                             *

     Defendant.                      *
_____

O R D E R

Plaintiffs claim that when Kevin Bennett died on August 5, 2017, he was survived by two minor children, K.S.B. and K.T.B., who are nine-years-old and five-years-old, respectively. Under the terms of Bennett's employer-sponsored group life insurance policy with Defendant Securian Life Insurance Company, Bennett's children were the undisputed beneficiaries of the policy death benefits in the amount of $28,000. Instead of paying those benefits to K.S.B. and K.T.B, Securian erroneously paid them to Bennett's parents based upon the representation of the parents that Bennett had no children, the lack of any mention of children in Bennett's obituary, and Bennett's decision to waive life insurance on his children with him as the beneficiary. Had Securian visited Bennett's home before paying the benefits, it

1

would have discovered Bennett's long-term girlfriend and his two children.

After learning of the Securian policy's existence, the mother of K.S.B. and K.T.B., who was Bennett's long-time girlfriend and shared his home with their children, attempted to make a claim for the benefits on K.S.B. and K.T.B.'s behalf. Before a formal claim could be made, Securian responded that the benefits had already been paid to someone else and that the claims file had been closed. No notice was provided at that time that the life insurance policy was part of an ERISA Plan; nor was there any mention of any administrative appeals rights under the Plan or that exhaustion of such an appeal was required before a lawsuit could be filed.

Not satisfied with Securian's response, K.S.B. and K.T.B's lawyer made a formal demand on Securian a few months later, providing Securian with their birth certificates showing them to be Bennett's natural children and pointing out that the Securian policy clearly made them the beneficiaries of the life insurance benefits. Securian stood firm and confirmed its previous decision— it would not be paying the kids a dime. It did include with this correspondence a document that explained that the children could administratively appeal that decision. That document, however, did not clearly explain that they were required to exhaust administrative remedies before they could file a lawsuit. It simply stated that they had the right to an administrative appeal,

and that they could file a lawsuit after that appeal.  While the notice did reasonably inform them that they could appeal and still file a lawsuit even if they lost that appeal, the notice did not clearly inform them that they could *only* file a lawsuit after they pursued an appeal.  Moreover, the Securian policy and the plan documents do not indicate that exhaustion of administrative remedies is a prerequisite for filing a lawsuit.

With their claim now having been rejected twice, knowing that Securian had all the information it needed to determine that the children were the rightful beneficiaries, understanding that they could administratively appeal, believing that such an appeal would be pointless, and not having been adequately informed that they must nevertheless pursue a pointless administrative appeal as a prerequisite to filing suit, the children's counsel filed a lawsuit to recover the benefits.

Securian argues that it paid the correct beneficiaries under its policy.  But that argument ignores the plain language of the policy which makes Bennett's children the undisputed beneficiaries, and it misconstrues the present record which clearly establishes that K.T.B. and K.S.B. are Bennett's natural children.  Securian also overreaches in its reliance upon a Georgia statute that protects insurers in limited circumstances from having to pay a claim twice when it pays benefits in accordance with the policy terms before it has notice of a competing claim.

Securian's strongest argument is that the children failed to exhaust their administrative remedies, but as explained in the remainder of this order, that failure is excused because of futility and inadequate disclosure of the exhaustion requirement. Accordingly, K.S.B. and K.T.B.'s motion for partial summary judgment (ECF No. 14) is granted, and Securian's motion (ECF No. 18) is denied. Securian's motion to dismiss K.S.B. and K.T.B.'s breach of fiduciary duty claim (ECF No. 15) is terminated as moot.

## FACTUAL BACKGROUND

Securian issued Group Life Insurance Policy No. 34362-G to cover employees of PepsiCo., Inc. and associated companies. Cruz Decl. ¶ 2, ECF No. 4-1; *see generally* Notice of Removal Ex. 6, Policy, ECF No. 1-7. The policy has an effective date of September 1, 2014 and has been renewed every year since then. *Id.* The policy allows an employee to designate a beneficiary to receive death benefits. But, if an employee does not designate a beneficiary, the policy says Securian will pay death benefits to:

(1) [the decedent's] lawful spouse if living, otherwise;

(2) [the decedent's] natural or legally adopted child (children) in equal shares, if living, otherwise;

(3) [the decedent's] parents in equal shares, if living, otherwise;

(4) [the decedent's] siblings in equal shares, if living, otherwise;

(5) the personal representative of [the decedent's] estate.

4

Policy 5, ECF No. 1-7 at 39.

Bennett was a PepsiCo employee covered under the policy who died suddenly on August 5, 2017. He had not named a beneficiary for the policy, and he was not married at the time of his death. PepsiCo notified Securian of Bennett's death on August 15, 2017. Bennett's obituary stated "Kevin D. Bennett . . . of Union Point passed away on August 5, 2017" and "[h]e is survived by his parents, Mr. David C. Bennett and Mrs. Shirley Derrico Bennett, siblings, other relatives and friends." Cruz Decl. Ex. 2, Admin R. 33, ECF No. 18-2 at 35.

On August 23, 2017, Securian requested Bennett's parents provide a copy of his certified death certificate and completed Preference Beneficiary Statements. *Id.* at 35-38, 40-43. Both parents completed the Preference Beneficiary Statements and checked a box stating Bennett was not survived by a lawful spouse or biological or legally adopted child. *Id.* at 48-51. They both signed the statements which clearly disclosed: "Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison." *Id.* at 48, 50. On September 12, 2017, after receiving the Preference Beneficiary Statements, Securian issued checks to Bennett's parents and a funeral home for the full amount of the death benefit owed under Bennett's policy. *Id.* at 16.

On November 21, 2017, counsel for K.S.B. and K.T.B. sent Securian a letter requesting documents to file a claim under Bennett's policy on behalf of Bennett's children.  *Id*. at 72.  On December 5, 2017, Securian responded by advising that the "benefit has been paid in full and [Securian's] handling has terminated" and explaining how K.S.B. and K.T.B. can access claim information.  *Id*. at 82.  On May 30, 2018, K.S.B. and K.T.B.'s counsel made a formal demand for benefits under the policy and provided Securian with K.S.B. and K.T.B.'s birth certificates, which listed Bennett as the father of K.S.B. and K.T.B.  *Id*. at 162-66.  Then, on July 10, 2018, Securian responded saying it had paid Bennett's policy benefits in full in good faith to Bennett's parents before Securian had notice of a competing claim and that Securian relied on Bennett's parents' representations.  *Id*. at 169-70.  The same day, Securian sent K.S.B. and K.T.B.'s attorney a letter entitled "Appeal Rights: The Employee Retirement Income Security Act (ERISA)."  *Id*. at 171.  This letter advised "[y]ou have the right to appeal an adverse benefit determination regarding your claim." *Id*.  It stated, "[y]ou have 60 days following receipt of this notice to appeal our decision."  *Id*.  And it notified them that "[y]ou have the right to bring a civil action under section 502(a) of ERISA following an appeal of an adverse benefit determination." *Id*.  "Any civil action must be brought within a certain time period following an appeal."  *Id*.  Nothing in this correspondence, the

Securian policy, or the plan documents clearly indicated that pursuing an administrative appeal was a prerequisite for filing a lawsuit.

Neither K.T.B. nor K.S.B. appealed the adverse benefit decision. Instead, on October 8, 2018, three months after the deadline for bringing an administrative appeal expired, K.S.B. and K.T.B., by next friend Nyisha Harris, brought state law claims against Securian in the Superior Court of Athens-Clarke County. Securian removed the action to this Court, and the Court found that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), completely preempted all of K.S.B. and K.T.B.'s state law claims. On July 31, 2019, K.S.B. and K.T.B. filed an amendment to their complaint asserting a claim for death benefits owed pursuant to Bennett's policy under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and asserting a claim for Securian's breach of its fiduciary duties under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). On the same day, K.S.B. and K.T.B. moved for partial summary judgment (ECF No. 14). Securian responded by filing a cross motion for summary judgment (ECF No. 18) and a motion to dismiss K.S.B. and K.T.B.'s fiduciary duty claim (ECF No. 15).

DISCUSSION

## I. Failure to Exhaust Administrative Remedies

Securian contends that K.S.B. and K.T.B. have waived any claims they may have to the death benefit because they failed to exhaust administrative remedies by not appealing Securian's adverse benefits decision prior to filing suit. It "is well-settled that 'plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.'" *Perrino v. S. Bell Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000). This exhaustion requirement is "strictly enforce[d]," *id.* at 1316, and it applies equally to K.S.B. and K.T.B.'s claim for death benefits under Bennett's plan and their claim for breach of fiduciary duty. *See Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008) ("Th[e] exhaustion requirement applies equally to claims for benefits and claims for violations of ERISA itself." (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006))). "Ordinarily, if a plan participant failed to take advantage of an available administrative appeal by pursuing it in compliance with a reasonable filing deadline, she has failed to exhaust her administrative remedies and that bars federal court review of her claim." *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1206 (11th Cir. 2003). Here, K.S.B. and K.T.B. did not take advantage of Securian's administrative appeal process within

8

the 60-day deadline and, therefore, failed to exhaust administrative remedies before bringing suit.

That said, "a district court has the sound discretion 'to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate, . . . or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Perrino*, 209 F.3d at 1315 (first quoting *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997), then quoting *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846-47 (11th Cir. 1990)). Additionally, a Court may excuse this requirement when "the reason the claimant failed to exhaust is that she reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit." *Watts,* 316 F.3d at 1207. K.S.B. and K.T.B. argue that their failure to exhaust should be excused because exhaustion would have been futile and because they did not have adequate notice of the administrative appeals process.

Before K.S.B. and K.T.B. even made a formal claim, Securian issued a preemptive strike and informed them that the death benefit had been paid. With only one death benefit under the policy, no provision authorized the payment of a second death benefit. In parochial parlance, it was a done deal. That same correspondence confirmed the inalterable position taken by Securian when it stated

that it had closed the file on the matter.  Period.  No indication

of any right to appeal was given and no glimmer of hope existed

that Securian would reconsider its decision.  When K.S.B. and

K.T.B.'s counsel subsequently made a formal demand, Securian

reconfirmed its earlier decision.  At that time, it had all the

information necessary to establish that it had paid the wrong

beneficiary—the children's birth certificates identified Bennett

as their father.  That information made no difference to Securian.

They had already paid the benefit to Bennett's parents and were

not going to voluntarily pay twice.  Consistent with its previous

preemptive denial, Securian summarily denied the claim.  Not only

had the file been closed as indicated in the previous

correspondence, but Securian's mind was likewise closed to any

reconsideration.   These circumstances do not give rise to mere

speculation that Securian would not reconsider its previous

decision if an appeal were filed.  These circumstances clearly

establish that any further pursuit of the benefit administratively

would be pointless.  The only thing that would be accomplished by

an administrative appeal would be further delay in the children,

who were the rightful beneficiaries, receiving the death benefit

to which they were entitled.

K.S.B. and K.T.B. thus knew that Securian had twice decided

not to pay them the death benefit, that Securian had all the

information necessary to reconsider its decision, that any

reconsideration of its previous decision would be based upon the same evidence Securian had available when it denied the claim originally, and that any reconsideration by Securian would result in Securian having to pay double the death benefit that the policy required, which arguably would be contrary to the duties it owed to the other plan participants.  This record makes it clear that an administrative appeal would have been pointless.

The Court understands that the fact that the same decisionmaker would be making the same decision based on the same factual record standing alone may not be sufficient to find futility.  *See, e.g., Lanfear*, 536 F.3d at 1224-25 (finding exhaustion would not have been futile even though the same parties who allegedly breached their fiduciary duty would have been the decisionmakers in the administrative proceedings).  But that is not the situation here.  Additional circumstances—including Securian's preemptive denial, its mindset that the file had been closed, the fact that the record was fully developed at the time of the original denial, and the consequence that any reconsideration would require the double payment of the death benefit—make it clear that Securian was not likely to change its mind.  The mere *possibility* that decisionmakers may change their minds is not sufficient to reject a claim of futility when it is otherwise irrational to speculate that they would do so.  *See Oliver v. Coca Cola,* 497 F.3d 1181, 1200-1202 (11th Cir. 2007),

*vacated in part on other grounds,* 506 F.3d 1316 (11th Cir. 2007);
*see also Ruttenberg. v. U.S. Life Ins. Co.,* 413 F.3d 652 (7th Cir.
2005)(explaining that futility may be shown by demonstrating "that
it is 'certain' a plaintiff's claim will be denied by the plan
administrator" and affirming the district court's futility finding
when there was nothing in the record indicating that had the
plaintiff complied with the administrative appeals requirement
defendant would have altered its decision).

Securian points to the many cases that hold that futility
cannot be found when it is merely speculative that the claim would
be denied on appeal. *See, e.g.*, *Bickley*, 461 F.3d at 1330
("Bickley's claim of futility is merely speculative because he did
not even attempt to pursue the administrative procedure available
so there is no indication as to whether [the employer] . . . would
have pursued the claims."). But contrary to Securian's contention,
this case does not involve mere "bare allegations of futility."
*See Fla. Health Scis. Ctr., Inc. v. Total Plastics, Inc.*, 496 F.
App'x 6, 12-13 (11th Cir. 2012) (per curiam). The record instead
demonstrates a "clear and positive" showing of futility. *Id.*
Securian's conduct made it clear, as it stated, that this file was
closed. Assuming that courts may still use common sense when
conducting a legal analysis, the conclusion that Securian was not
going to pay twice on the same claim was a reasonable certainty,
not sheer speculation. Seeking reconsideration of a done deal was

pointless.  Exhaustion under these circumstances would be a wasted exercise and futile.

To complicate matters, the information provided to K.S.B. and K.T.B.'s counsel regarding their appeal rights did not clearly communicate that an administrative appeal was a prerequisite for filing a lawsuit.  The first correspondence to K.S.B. and K.T.B. indicating that the death benefit had been paid and the file had been closed made no mention of any appeal right.  The second denial letter did state the following: "[y]ou have the right to bring a civil action under section 502(a) of ERISA *following* an appeal of an adverse benefit determination" and "[a]ny civil action must be brought within a certain time period *following* an appeal."  Admin. R. 171.  Securian contends that this language informed K.S.B. and K.T.B. that they must exhaust administrative remedies before filing a lawsuit.  This permissive language, however, is susceptible to more than one reasonable interpretation.  It is ambiguous.  The word "following" in this message could mean that a lawsuit may be filed after the appeal has been decided.  But it also could mean that the appeal does not prevent the claimant from filing a lawsuit after the appeal has been decided.  One reasonable interpretation could be that the notice simply permitted an appeal and a subsequent lawsuit.  Another reasonable interpretation could be that it permitted a lawsuit *before* an appeal because the language did not prohibit it.  Although an employer through its

group insurance plan can certainly make exhaustion of administrative remedies a part of its bargain with its employees, it must clearly do so. *See Watts,* 316 F.3d at 1207 (recognizing that a claimant's failure to exhaust could be excused if "the reason the claimant failed to exhaust is that she reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit"). The plan here did not include such a requirement, and the correspondence to K.S.B. and K.T.B. did not clearly inform them of the exhaustion requirement. Under these circumstances, exhaustion is excused, particularly in light of the circumstances indicating that such exhaustion would be futile. The Court finds that K.S.B. and K.T.B. have shown that their failure to exhaust should be excused.

## II. *De Novo* Review of Securian's Decision

Having excused the children's failure to exhaust their administrative remedies, the Court must determine whether Securian's decision to deny them benefits was correct under the policy. The Court's review of that decision is *de novo* because the ERISA plan here did not provide Securian with discretionary authority to determine eligibility for benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (citing *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989)). In applying the *de novo* standard, the Court must "determine whether the claim

administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision)." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

Bennett's policy clearly states that when, as here, the policyholder did not designate a beneficiary and is unmarried, the rightful beneficiaries to death benefits under the policy are the policyholder's "natural . . . children." Policy 5, ECF No. 1-7 at 39. K.S.B. and K.T.B. point to evidence demonstrating that they are Bennett's natural children. They provide their mother's affidavit which states "Kevin Bennett had two children at the time of his death, K.S.B. and K.T.B." Harris Aff. ¶ 5, ECF No. 14-3. They also provide their birth certificates which identify K.S.B. and K.T.B.'s father as "Kevin Devone Bennett." Admin R. 165-66. Based on this evidence, K.S.B. and K.T.B. argue that there is no genuine dispute about whether they are Bennett's natural children and, thus, entitled to death benefits under his policy.[1]

Because the Court's review at this stage is focused on the parties' cross motions for summary judgment, it must determine

---

[1] The Court rejects Securian's argument that K.S.B. and K.T.B. are not beneficiaries because under Georgia law they may not be considered legitimated. The policy covers "natural children." "Natural child" has a well-accepted meaning. *See Natural Child*, Black's Law Dictionary (9th ed. 2009) (defining "natural child" as "[a] child by birth, as distinguished from an adopted child"). The record here can reasonably be interpreted that Bennett impregnated K.T.B. and K.S.B.'s mother, and she delivered these two children. This is persuasive evidence that they are Bennett's natural children. If Securian wished to contest this fact, it could have sought testing during discovery in this action. It did not do so, and it may not speculate now as to their paternity.

whether genuine factual disputes exist to be resolved by the factfinder. Securian points to the following evidence to create a genuine factual dispute regarding K.S.B. and K.T.B.'s paternity: (1) Bennett's obituary which did not mention that Bennett had children; (2) Bennett's parents signing forms stating Bennett did not have children; (3) Bennett's waiver of life insurance with his children as the insureds and himself as the beneficiary; and (4) the fact that K.S.B. and K.T.B.'s birth certificates refer to Bennett as "Kevin Devone Bennett" rather than "Kevin Devon Bennett." As explained below, this evidence does not create a genuine factual dispute regarding K.S.B. and K.T.B.'s paternity.

Preliminarily, the Court notes that Bennett's obituary is hearsay that would not be admissible at trial to prove that he did not have children. Fed. R. Evid. 801(c). To be considered at summary judgment, it must be reasonable to conclude the evidence would be reducible to admissible form at trial. The Court can conceive of no theory under which the obituary would be admissible to show the truth of what is asserted in it. Accordingly, it cannot be used to establish a genuine factual dispute. *See* Fed. R. Civ. P. 56(c)(2) (noting that, at summary judgment, "[a] party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *Liberty Leasing Co. v. Hillsum Sales Corp.*, 380 F.2d 1013, 1015

(5th Cir. 1967) (affirming a district court's refusal to give weight at summary judgment to hearsay in a deposition testimony).[2]

Securian next points to the forms signed by Bennett's parents in which they checked a box that indicated they were unaware of Bennett having any children. A superficial review of this evidence could suggest that it conflicts with the mother's testimony that the children were Bennett's and with the birth certificates that document and confirm her testimony. But a more careful analysis makes clear that Bennett's parents' *lack of awareness* that their son fathered children is not inconsistent with K.S.B. and K.T.B.'s mother's testimony that Bennett was her children's biological father. In light of K.S.B. and K.T.B.'s mother's testimony, a factfinder could not reasonably conclude that her testimony was untruthful simply because Bennett's parents were unaware that their son fathered children. The testimony of the mother and the parents is reconcilable. The children were Bennett's, and his parents were unaware of it.

Securian also maintains that Bennett's waiver of life insurance with his children as the insureds and himself as the beneficiary somehow is probative that he did not have natural children. To the contrary, this evidence only shows that he chose

_____

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

not to take out life insurance on the lives of a five-year-old and a nine-year-old child. It does not create a genuine factual dispute regarding the children's paternity.

The Court also rejects Securian's argument that a one-letter typographical error of Bennett's middle name in K.S.B. and K.T.B.'s birth certificates creates a genuine fact dispute regarding their paternity. No reasonable factfinder could conclude that this minor misspelling suggests that Bennett is not the father of the children.

The Court finds that no genuine factual dispute exists regarding K.S.B. and K.T.B.'s paternity. The present record establishes that they are Bennett's natural children. As Bennett's natural children, they are the rightful beneficiaries to the death benefits under Bennett's policy. Thus, after a *de novo* review, the Court finds that Securian's failure to pay them the benefits was wrong.[3]

---

[3] Even if Securian's evidence on paternity is sufficient to create a genuine factual dispute such that summary judgment should be denied, the Court at the factfinding stage would find that evidence unpersuasive when compared with K.S.B. and K.T.B.'s overwhelming evidence on the issue. Because the factual record is set, the Court can decide the factual dispute on that present record, and a bench trial on this issue would appear to be unnecessary. To be clear, the Court finds no factual dispute on the present record and grants summary judgment, but if it were to act as the factfinder in reviewing the established record, the ultimate result would be the same.

**III. Securian's Good Faith Statutory Defense**

Securian argues that even if K.S.B. and K.T.B.'s failure to exhaust is excused and its decision was *de novo* wrong, it is entitled to summary judgment because it paid the claim in good faith and in accordance with its policy.  It relies upon O.C.G.A. § 33-24-41, which states:

> Whenever the proceeds of or payments under a life . . . insurance policy . . . become payable in accordance with the terms of the policy . . . and the insurer makes payment of the proceeds or payments in accordance with the terms of the policy . . . , the person then designated in the policy . . . as being entitled to the proceeds or payments, if legally competent, shall be entitled to receive the proceeds or payments . . . and the payments shall fully discharge the insurer from all claims under the policy . . . unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract.

The fundamental flaw in Securian's argument is its assumption that it paid the death benefit in "accordance" with its policy to a "person then designated in the policy . . . as being entitled to the proceeds or payment."  It did not.  As previously discussed, the present record establishes that K.S.B. and K.T.B. are Bennett's natural children.  Securian's policy unambiguously provides that when there is no designation of a named beneficiary and no surviving spouse, the death benefit is owed to the decedent's natural or adopted children.  It is thus undisputed that the policy required Securian to pay the death benefit to K.S.B. and K.T.B.

Its payment of the benefit to the wrong persons, the funeral home and Bennett's parents, even if they were unaware at the time that Bennett had children, was not a payment "in accordance" with the Securian policy. Furthermore, the parents were not named anywhere in the policy. They certainly were not "persons designated in the policy . . . as being entitled to the proceeds or payment." They did fall within a "category" of persons who may be beneficiaries if other beneficiaries with a superior claim, such as the children, did not exist. But this Georgia statute, which provides extraordinary equitable type relief to insurance companies, requires that the payment be made to someone named in the policy as being entitled to the benefits in order for the insurance company to be excused from paying the wrong party. O.C.G.A. § 33-24-41 provides Securian with no safe harbor under the circumstances presented here, and it cannot escape its clear contractual duty to pay the benefits according to the policy terms.[4]

---

[4] Securian also asks the Court to adopt the "ERISA common law principle" enunciated by the Fourth Circuit in *Crosby v. Crosby,* 986 F.2d 79 (4th Cir. 1993). Under that principle, "an insurer is discharged from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims." *Id.* at 83; *see also Weed v. Equitable Life Assurance Soc. of U.S.*, 288 F.2d 463, 464 (5th Cir. 1961); *Rogers v. Unionmutual Stock Life Ins. Co.,* 782 F.2d 1214 (4th Cir. 1986). The Georgia statute relied upon by Securian, O.C.G.A. § 33-24-41, which the Court has found does not relieve Securian of liability here, is a codification of this general principle. And like that Georgia statute, most of the cases that recognize this principle apply it when the policy designates a beneficiary by name (not by category) in the policy, and the insurer mistakenly pays that "named beneficiary." *See, e.g., Union Labor Life Ins. Co. v. Parmely*, 311 A.2d 24, 26 (Md. 1973) (finding the equitable rule did not discharge liability because the beneficiary was designated by class). In *Crosby*, the Fourth

## IV.   Summary and Conclusion

Because K.S.B. and K.T.B. are excused from exhaustion and there is no genuine dispute that based on the present record they are entitled to the death benefit under the Securian policy, their motion for partial summary judgment (ECF No. 14) is granted as to their claim pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).   In light of this conclusion, their fiduciary duty claim pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), is found to be moot.   Securian's motion to dismiss the fiduciary duty claim (ECF No. 15) is thus likewise moot.   For these same reasons, Securian's motion for summary judgment (ECF No. 18) is denied.   The question of attorney's fees remains to be decided.[5] Within 21 days of today's order, K.S.B. and K.T.B. shall file their motion and supporting evidence for attorney's fees.   Securian shall respond within 21 days.   Securian's response shall indicate whether it seeks a hearing on the motion.

---

Circuit implied that this named-beneficiary-distinction was in direct conflict with the ERISA principles that (1) "a court should not disturb a plan administrator's discretionary determination of benefit eligibility when such a determination involved construing 'disputed or doubtful terms,'" and (2) "an insurer discharges its liability under an insurance policy by making good faith payments to a purported beneficiary without notice of any competing claims." *Crosby*, 986 F.2d at 84.   But in the present case, the *Crosby* concerns supporting its rationale to arguably excuse erroneous payment even to an unnamed beneficiary do not exist because this Court is conducting a *de novo* review unlike in *Crosby* and, therefore, ERISA does not demand deference to Securian's decisions. Thus, even if the Eleventh Circuit found the *Crosby* rationale appealing, it does not protect Securian from its erroneous payment here.

[5] K.S.B. and K.T.B. also alleged a claim for bad faith penalties under Georgia law.   As the Court previously ruled, those claims are preempted by ERISA.

IT IS SO ORDERED, this 29th day of October, 2019.

S/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA